UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ABIGAIL STRUBEL, individually and on behalf
of all others similarly situated,

                      Plaintiff,                      13-cv-4462 (PKC)

      -against-                    MEMORANDUM
                                                          AND ORDER

COMENITY BANK,

                      Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff Abigail Strubel brings this putative class action individually and on behalf of consumers who use Victoria's Secret-brand credit cards. She alleges that Comenity Bank ("Comenity"), which issues the credit cards, violated the Truth in Lending Act, 15 U.S.C. § 1601, et seq. ("TILA"), and one of its implementing regulations by failing to adequately disclose certain consumer-rights policies. According to Strubel, Comenity failed to provide certain information set forth in a model form that was promulgated to ensure compliance with a TILA implementing regulation that is commonly known as Regulation Z, 12 C.F.R. § 1026.6.

        Discovery in this case is now closed, and Comenity moves for summary judgment. The contents of Comenity's notice to consumers are undisputed. Because Strubel's claims are based primarily on minor, stylistic differences between the Model Form and Comenity's notice to consumers, Comenity's motion for summary judgment is granted, and judgment is entered in its favor.

BACKGROUND

Comenity issues private-label consumer credit cards branded for use at specific retailers, including a card line affiliated with Victoria's Secret.  (Def. 56.1 ¶ 2; Pl. 56.1 Resp. ¶ 2.)  On or about June 27, 2012, Strubel opened an account for a Victoria's Secret-brand credit card, which she used to purchase a $19.99 item of clothing.  (Def. 56.1 ¶¶ 4-5; Pl. 56.1 Resp. ¶ 4-5.)

When consumers open new accounts, they enter into a credit card agreement (the "Agreement") provided by Comenity.  (Def. 56.1 ¶ 3; Pl. 56.1 Resp. ¶ 3.)  It is undisputed that Strubel received the Agreement, which set forth terms and conditions for the card's use, including information on interest rates, charges, fees, and a disclosure of consumer rights.  (Def. 56.1 ¶ 7; Pl. 56.1 Resp. ¶ 7.)

The Agreement included provisions that governed consumer challenges to certain charged items, which Strubel asserts were inadequate under TILA.  One provision of the Agreement required that if a consumer gave written notice of a billing dispute, Comenity was obligated to reply within 30 days, unless it had already corrected the error.  (Def. 56.1 ¶ 19; Pl. 56.1 Resp. ¶ 19.)  Another stated that a consumer had the right not to pay for unsatisfactory goods and services if the consumer had made a good-faith effort to correct the problem with the merchant.  (Def. 56.1 ¶ 20; Pl. 56.1 Resp. ¶ 20.)  During all times relevant to this action, the Victoria's Secret-brand card did not offer an automatic-payment plan, and Strubel had no such plan on her account.  (Def. 56.1 ¶ 15; Pl. 56.1 Resp. ¶ 15.)

The Agreement contained an arbitration provision and class action waiver, both of which a consumer could reject by submitting a signed, written notice to Comenity within 30 days.  (Def. 56.1 ¶ 8; Pl. 56.1 Resp. ¶ 8.)  Strubel sent notice to opt out of the arbitration and

class action provisions in a letter dated July 16, 2012.  (Def. 56.1 ¶ 9; Pl. 56.1 Resp. ¶ 9.)  Among all consumers with a Victoria's Secret credit card, 72 have opted out of the arbitration and class action provisions.  (Def. 56.1 ¶ 9; Pl. 56.1 Resp. ¶ 9.)  According to the Complaint's class allegations, Strubel brings this action on behalf of all individuals who made an initial purchase with a Victoria's Secret card on or after June 27, 2012, and estimates that the class consists of more than 1,000 persons.  (Compl't ¶¶ 15, 17.)

In addition to her purchase on the day that she opened her account, Strubel used the card one other time, to buy $118.50 in merchandise in August 2013.  (Def. 56.1 ¶ 13; Pl. 56.1 Resp. ¶ 13.)  In her two purchases using the card, Strubel returned no items, had no billing disputes and paid in advance of the billing deadline.  (Def. 56.1 ¶ 14; Pl. 56.1 Resp. ¶ 14.)  Strubel testified in her deposition that she was injured because Comenity "prevented me from full exercise of my rights" under TILA.  (Def. 56.1 ¶ 16; Pl. 56.1 Resp. ¶ 16.)  She does not claim that she suffered actual damages, and seeks only statutory damages.  (Def. 56.1 ¶ 16; Pl. 56.1 Resp. ¶ 16.)

SUMMARY JUDGMENT STANDARD

"Rule 56 allows a party to seek a judgment before trial on the grounds that all facts relevant to a claim(s) or defense(s) are undisputed and that those facts entitle the party to the judgment sought."  Jackson v. Federal Express, 766 F.3d 189, 194 (2d Cir. 2014).  Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed. R. Civ. P.  It is the movant's initial burden to come forward with evidence on each material element of its claim or defense, sufficient to demonstrate its entitlement to relief as a matter of law.  Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  In raising a triable

issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)).

A fact is material if it "might affect the outcome of the suit under the governing law," meaning that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 248 (1986).  The Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, granting summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party.  Costello v. City of Burlington, 632 F.3d 41, 45 (2d Cir. 2011); accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-88 (1986). In reviewing a motion for summary judgment, the court may scrutinize the record, and grant or deny summary judgment as the record warrants.  Rule 56(c)(3), Fed. R. Civ. P.  In the absence of any disputed material fact, summary judgment is appropriate.  Rule 56(a), Fed. R. Civ. P.

"A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory or based on speculation." Major League Baseball Properties, Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008) (citations omitted); see also Anderson, 477 U.S. at 249-50 (summary judgment "may be granted" if the opposing evidence is "merely colorable" or "not significantly probative") (citations omitted).  An opposing party's facts "must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor

merely suspicions." Contemporary Mission. Inc. v. U.S. Postal Serv., 648 F.2d 97, 107 n.14 (2d Cir. 1981) (internal quotation marks and citation omitted).

DISCUSSION

TILA promotes consumers' "informed use of credit" by requiring that creditors provide "meaningful disclosure of credit terms." See 15 U.S.C. § 1601(a); Chase Bank USA, N.A. v. McCoy, 131 S. Ct. 871, 874 (2011). The statute grants rulemaking authority to the Consumer Financial Protection Bureau ("CFPB") and, previously, to the Board of Governors of the Federal Reserve. 15 U.S.C. §§ 1604(a), 12 U.S.C. § 5581(b)(1). "Pursuant to this authority, the Board promulgated Regulation Z, which requires credit card issuers to disclose certain information to consumers." Chase, 131 S. Ct. at 874.

Regulation Z grows out of a TILA provision providing that "[b]efore opening any account under an open end consumer credit plan, the creditor shall disclose to the person to whom credit is extended" certain categories of information. 15 U.S.C. § 1637(a). Among these required disclosures is "[a] statement, in a form prescribed by regulations of the [CFPB] of the protection provided by sections 1666 and 1666i of this title to an obligor and the creditor's responsibilities under sections 1666a and 1666i of this title." Id. § 1637(a)(7). These sections of TILA respectively address the correction of billing errors, the regulation of credit reporting and card issuers' obligations for unresolved transactions. 15 U.S.C. §§ 1666, 1666a, 1666i.

Regulation Z requires creditors to provide consumers with a statement of billing rights. 12 C.F.R. § 1026.6(b)(5)(iii). The creditor-issued statement must "outline[ ] the consumer's rights and the creditor's responsibilities under §§ 1026.12(c) and 1026.13," and in it, the "creditor shall disclose, to the extent applicable" the information in a notice "substantially similar to the statement found in Model Form G-3(A) in appendix G to this part." 12 C.F.R. §

1026.6(b)(5)(iii).  The text of Model Form G-3(A) (the "Model Form") provides instructions for consumers who identify a mistake on their statement, an explanation of what the card issuer must do after receiving notice of the mistake, and describes consumers' rights in the event that they are dissatisfied with a purchase.  (See Compl't Ex. C.)

Unlike some other federal courts of appeals, the Second Circuit has not adopted a strict liability standard for TILA.  It has observed that TILA is intended to impose civil liability only for "significant violations."  Turner v. Gen'l Motors Acceptance Corp., 180 F.3d 451, 457 (2d Cir. 1999); see also Kahraman v. Countrywide Home Loans, Inc., 886 F. Supp. 2d 114, 122 n.6 (E.D.N.Y. 2012) (distinguishing Second Circuit authority from circuits "that impose a strict liability interpretation of TILA's disclosure requirements . . . .").  "District courts in this circuit have largely also dismissed purely technical claims."  Schwartz v. HSBC Bank USA, N.A., 2013 WL 5677059, at *8 (S.D.N.Y. Oct. 18, 2013) (Engelmayer, J.) (collecting cases).  This Court is unaware of any authority in this Circuit that has held a card issuer may be liable solely for deviating from the Model Form, as opposed to liability for neglecting the substantive disclosure requirements of TILA or Regulation Z.

According to Strubel, Comenity violated TILA because the Agreement failed to provide information in a format substantially similar to that of the Model Form.  Her complaint identifies five different areas of Comenity's disclosures that, she claims, materially fail to satisfy the terms of Regulation Z, as reflected by the Model Form.  Comenity moves for summary judgment as to each of them.

The Court concludes that the Agreement's terms are consistent with the requirements of Regulation Z and TILA.  Moreover, in one instance, Strubel's claim is premised

on a TILA provision that is inapplicable to the repayment options offered by Comenity. Comenity's summary judgment motion is granted.

    I.    Summary Judgment Is Granted to Comenity as to the Absence of Automatic Payment Plan Disclosure.

Strubel contends that Comenity violated TILA by not disclosing terms that govern a credit card's automatic payment plan. It is undisputed that Comenity did not offer an automatic payment plan to consumers. For the reasons explained, Comenity's motion is granted as to this purported TILA violation.

Strubel contends that Comenity violated TILA by failing to warn consumers that they must notify Comenity of any billing disputes more than three business days before an automatic payment is scheduled. (See Compl't ¶ 36.) Regulation Z provides that, if a consumer has enrolled in a credit card's automatic payment plan, the consumer must identify any disputed charge more than three business days before a scheduled payment. The relevant provision of Regulation Z states:

> If the cardholder has enrolled in an automatic payment plan offered by the card issuer and has agreed to pay the credit card indebtedness by periodic deductions from the cardholder's deposit account, the card issuer shall not deduct any part of the disputed amount or related finance or other charges if a billing error notice is received any time up to 3 business days before the scheduled payment date.

12 C.F.R. § 1026.13(d)(1). The Model Form similarly provides that if a consumer who is enrolled in an automatic payment plan believes that there has been an error in a credit card statement, the consumer "must contact" the card issuer "[a]t least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong."[1]

---

[1] While Regulation Z refers to "an automatic payment plan," the Model Form uses the term "automated payment." Neither party contends that "automated payment" has a different meaning than "automatic payment."

It is undisputed that "Comenity did not offer an automatic payment plan for the Victoria's Secret Card branded credit card account at all times relevant to this lawsuit. Consequently, Ms. Strubel did not have an automatic payment plan on her Victoria's Secret Credit Card account." (Pl. 56.1 Opp. ¶ 15.) Thus, Strubel seeks to hold Comenity liable for failing to inform consumers of their obligations under a non-existent payment option. The CFPB has stated that the Model Form requires disclosures "to the extent applicable." 12 C.F.R. § 1026.6(b)(5). The Second Circuit has also rejected a TILA claim when a plaintiff claimed that disclosure was required for a product that the plaintiff did not use. See Schnall v. Marine Midland Bank, 225 F.3d 263, 268 (2d Cir. 2000) (because plaintiff did not avail himself of promotional interest rates, TILA did not require disclose of promotional rates in plaintiff's monthly statements).

Strubel does not rely on evidence that she enrolled in an automatic payment plan. Instead, she argues that Comenity has offered only a legal conclusion by asserting that it had no automatic payment plan; that this position is a belatedly raised affirmative defense; and that the existence of an automatic payment plan is otherwise irrelevant because Comenity may, at some point in the future, adopt such a plan. Each of these arguments is without merit: the existence of an automatic payment plan is a matter of proof in the summary judgment record; it is the non-movant's burden on summary judgment to come forward with some evidence to support its factual assertions; and the hypothetical possibility that Comenity may adopt some version of an automatic payment plan does not save her claim. Arguments that "are conclusory or based on speculation" are insufficient to defeat summary judgment. Major League Baseball Properties, Inc., 542 F.3d at 310.

Because the cited provisions of Regulation Z and the Model Form govern card users who enrolled in an automatic payment plan, and because no automatic payment plan has been in effect for the Victoria's Secret card, summary judgment is granted to Comenity as to any purported violation of section 1026.13(d)(1).

> II. Summary Judgment Is Granted to Comenity on Strubel's Claim Directed to <u>Confirmation that a Billing Dispute Has Been Received.</u>

Strubel contends that Comenity violated TILA by not adequately advising consumers that it must acknowledge a billing dispute within 30 days of receipt. (Compl't ¶ 37.) Her claim is based on the following provision of the Model Form, which states: "Within 30 days of receiving your letter, we must tell you that we received your letter.  We will also tell you if we have already corrected the error."  By contrast, the Agreement with Comenity states: "We must acknowledge your letter within 30 days, unless we have corrected the error by then.  Within 90 days, we must either correct the error or explain why we believe the bill was correct."  (Def. 56.1 ¶ 19; Pl. 56.1 ¶ 19.)

These notices differ only in that Comenity does not expressly provide that it will provide notice of receipt in the event that it corrects an error.  But the text of TILA does not require notice that a billing dispute has been received if the issuer has corrected the error, and provides instead that the card issuer must send written notice of a billing dispute's receipt within 30 days, "unless the action required in subparagraph (B) is taken within such thirty-day period." 15 U.S.C. § 1666(a)(3)(A).  Subparagraph (B) governs the correction of an erroneous charge.  It requires the creditor to explain in writing that a correction has been made, or, alternatively, the reasons why a correction is not required.  15 U.S.C. § 1666(a)(3)(B).  The creditor must definitively resolve the challenged charge within 90 days.  <u>Id.</u>

Thus, under TILA, the card issuer must either provide written notice of receipt within 30 days if the claimed billing error is unresolved, or, alternatively, written notice that the billing dispute has been resolved.  The Agreement sufficiently advises consumers that Comenity will do the same.  It states that Comenity "must acknowledge" receipt of the billing dispute within 30 days, "unless we have corrected the error by then."  This is consistent with 15 U.S.C. § 1666(a)(3)(A) and the Model Form.  Implicit to this assertion is that Comenity will provide notice if it "ha[s] corrected the error by then."  The Agreement also states that it ultimately will resolve any dispute within 90 days of receipt, as required by TILA.  15 U.S.C. § 1666(a)(3)(B).

The Agreement is substantially similar to the Model Form and is consistent with the requirements of TILA.  Comenity's motion is therefore granted as to its requirement to confirm receipt of a customer billing dispute.

III.   Comenity's Motion Is Granted as to Comenity's Notice Concerning Unsatisfactory Purchases.

Strubel contends that Comenity violated TILA because the Agreement's text governing consumer recourse for unsatisfactory purchases varies from the language of the Model Form.  She contends that the Agreement does not adequately inform consumers that purchases must be made with a credit card, and that the consumer must not have fully paid for an unsatisfactory item.  At most, Strubel has identified insubstantial and inconsequential differences between the Agreement with Comenity and the Model Form.  Summary judgment is therefore granted to Comenity.

The Model Form contains certain provisions concerning consumer rights in the event that the consumer is dissatisfied with credit card purchases.  The Model Form states in part:

> If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.  To use this right, all of the following must be true . . . .
>
> > 2. You must have used your credit card for the purchase.  Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.
> >
> > 3. You must not yet have fully paid for the purchase.

The Comenity Agreement's text varies from that of the Model Form.  The Agreement states in part:

> <u>Special Rule For Credit Card Purchases.</u>  If you have a problem with the quality of property or services that you purchased with a credit card and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services.

Strubel contends that the Agreement unlawfully varies from the Model Form because it does not state that these terms are limited to purchases with a credit card, rather than purchases made through cash advances or checks on the card account.  (Compl't ¶ 38.)  Strubel also argues that the Agreement fails to note that the purchase "must not have already been fully paid for." (Compl't ¶ 38.)

But the text of this portion of the Agreement expressly identifies itself as a "Special Rule For Credit Card Purchases," and governs "the quality of property or services that you purchased with a credit card . . . ."  On its face, the Agreement applies only to credit card purchases.

The Agreement does not separately state, "You must not yet have fully paid for the purchase," as prescribed in the Model Form.  However, it states that the consumer "may have the right not to pay <u>the remaining amount due</u> on the property or services."  If there is a

"remaining amount due" on the purchase, it is implicit that the consumer has "not yet . . . fully paid for the purchase."

Thus, although the Agreement's text varies from what is set forth by the Model Form, it notifies consumers that its provisions 1.) apply to credit card purchases, and 2.) apply if there is an amount due on the purchase – i.e., that the purchase has not been fully paid.  It is consistent with the Model Form.

While the terms vary slightly, Regulation Z does not require a card issuer to use language the mirrors the Model Form.  It states that an issuer's notice of customer rights must include language "that is substantially similar" to the terms of the Model Form.  12 C.F.R. § 1026.6(b)(5)(iii).  TILA's "purpose is to require 'meaningful disclosure,' not 'more disclosure.'" Turner v. Gen'l Motors Acceptance Corp., 180 F.3d 451, 457 (2d Cir. 1999).  Courts have rejected TILA claims that they consider to be premised on "purely technical" deficiencies.  See, e.g., Schwartz, 2013 WL 5677059, at *4 (collecting cases).

Comenity's motion for summary judgment is therefore granted as to its obligation to notify consumers of terms related to consumer recourse for unsatisfactory purchases.

IV.   The Agreement Sufficiently Notifies Consumers that Communications Should Be Made in Writing.

Strubel contends that the Agreement fails to notify consumers that they must contact Comenity in writing or electronically in the event that they are dissatisfied with a purchase of goods or services.  (Compl't ¶ 39.)  The Model Form states that if consumers wish to pursue their right not to pay for unsatisfactory goods or services, they must "contact us in writing [or electronically] . . . ."

The Agreement's discussion of consumer recourse in the event of an unsatisfactory purchase does not make separate reference to communications in writing.

However, the preceding text of the Agreement states that consumers should contact Comenity in writing in the event of any errors or billing questions. It states:

> <u>Notify Us In Case of Errors or Questions About Your Bill.</u> If you think your bill (Statement) is wrong, or if you need more information about a transaction on your bill, <u>write us</u> on a separate sheet at World Financial Network National Bank, PO Box 182782, Columbus, OH 43218-2782. <u>Write to us as soon as possible.</u> We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. <u>You can telephone us, but doing so will not preserve your rights.</u>

(emphasis added.)

Thus, the Agreement unambiguously states that communications concerning bills must be made in writing. Although the Agreement notes that consumers may also communicate via telephone, it appropriate cautions that telephone communications "will not preserve your rights."

While this portion of the Agreement is not included under the heading that governs consumer rights in the event of an unsatisfactory purchase, it is the Agreement's first provision related to consumer rights, and precedes all further discussion of those rights. Comenity's provision about written notice is not limited to any particular category of correspondence. And, again, Regulation Z does not require that a card issuer reproduce the format or text of the Model Form – it merely requires it to be "substantially similar." 12 C.F.R. § 1026.6(b)(5)(iii).

Because the Agreement adequately advises consumers that any dispute over an unsatisfactory purchase should be made in writing, Comenity's motion for summary judgment is granted.

    V.    Strubel's Claim Directed to Notice of a Potential Change of Terms Is Voluntarily Dismissed.

Finally, the Complaint alleged that the Agreement violated TILA by including a change-of-terms provision stating that Comenity may change or add new terms to the Agreement, provided that consumers receive advance notice required by law. (Compl't ¶ 42.) Strubel's memorandum in opposition to summary judgment states that she "is no longer pursuing this claim." (Opp. Mem. at 2-3.)

This claim is therefore voluntarily dismissed.

    VI.    Strubel's Motion for Class Certification Is Terminated.

Separately, Strubel has filed a motion to certify this action as a class action. (Docket # 51.) Because summary judgment is granted to Comenity as to all underlying claims, the motion for class certification is moot, and therefore terminated.

CONCLUSION.

Comenity's motion for summary judgment is granted in its entirety. The Clerk is directed to terminate the motion. (Docket # 39.)

Strubel's motion for class certification is terminated. (Docket # 51.)

The Clerk is directed to enter judgment in favor of Comenity.

SO ORDERED.

                                                                P. Kevin Castel
                                                       United States District Judge

Dated: New York, New York
         January 23, 2015